```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


MICHAEL PACHECO, SR., et al.,  *   Case No. 14-CV-07581(RJD)
                               *
          Plaintiffs,          *   Brooklyn, New York
                               *   February 23, 2018
     v.                        *
                               *
THE CITY OF NEW YORK, et al.,  *
                               *
          Defendants.          *
                               *
* * * * * * * * * * * * * * * *

           TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONIC
                       MOTION HEARING
              BEFORE THE HONORABLE PEGGY KUO
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:          MICHAEL J. COLIHAN, ESQ.
                             44 Court Street
                             Suite 906
                             Brooklyn, NY  11201

For the Defendants:          ELISSA BETH JACOBS, ESQ.
                             New York City Law Department
                             100 Church Street, 3-133b
                             New York, NY  10010
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1    (Proceedings commenced at 11:04 a.m.)
2    THE COURT: (Delay in start of audio) Kuo. Please
3 state your names for the record, please.
4    MR. COLIHAN: After you, Ms. Jacobs.
5    MS. JACOBS: Good morning. This is Elissa Jacobs
6 from Corporation Counsel for the defendants.
7    MR. COLIHAN: Good morning, Your Honor. For the
8 plaintiffs, Michael Colihan, C-O-L-I-H-A-N, 44 Court Street in
9 Brooklyn.
10    THE COURT: All right. So this matter was scheduled
11 so that we could talk about this issue of the confidential
12 informant and that person's criminal record.
13    Mr. Colihan, remind me again what facts you are
14 trying to elicit from the witness.
15    MR. COLIHAN: Yes. I would like to find out, Your
16 Honor, and I think the best way to that would be to direct the
17 City order a NYCIT (ph) sheet.
18    THE COURT: No, no, no. I'm sorry. I might have
19 misstated what I was trying to get at.
20    What are the facts in the deposition that you're
21 trying elicit? Put aside the criminal background, because
22 that's for impeachment purposes.
23    What facts are you trying to elicit with regard to
24 the incident?
25    MR. COLIHAN: I'm trying to figure out if the

informant, the confidential informant who would be the person here to establish probable cause for the arrest of the defendants, if he's a convicted felon of if he has other criminal convictions under the Federal Rules of Evidence that would impeach his credibility.

And I may have brought it out in the letter. By definition with the NYPD a confidential informant is in two categories. Some are people who exchange information about criminal activities for money.

Others are ones that are the subject of criminal charges themselves and what they call "court consideration" or leniency for their information.

So I think it's also important to bring out this gentleman's arrest.

Let's just say hypothetically he was charged with a large drug sale and that case was dismissed, or that case ended up as a misdemeanor and it turns out it wasn't due to his innocence or poor police work. It was due to the fact that he gave information about a co-defendant to get out from under.

I think by the very nature of what these people do, what the CI's do, there's a good chance that he's involved in criminal activity himself.

I mean, if -- even if he's not involved in the court consideration part of it, people who are able to get inside

information about criminal activities are often criminals themselves.

So I think that there's much more of a chance that this man is involved in something versus just the man on the street who happens to be a witness in a particular case.

THE COURT: Okay. So if that is the case, then I'm not entirely clear what difference it would make that this individual had a criminal record, because if you presume that CI's generally do, then -- and you're not saying that they're never reliable as the source of probable cause, then I'm not really sure what you would gain by finding out that this person, in fact, did have a criminal record --

MR. COLIHAN: Again, I'm sorry if I didn't make it clear.

THE COURT: -- right?

MR. COLIHAN: He's a witness to establish probable cause to arrest the three plaintiffs. I think that his credibility is going to be an issue.

THE COURT: Well, but I'm just -- I understand what you're trying to get at, but I'm not really understanding how you get there. So your clients were arrested pursuant to information obtained by this individual.

And the analysis, for purposes of establishing liability, is whether or not the police have probable cause.

MR. COLIHAN: Right.

1    THE COURT: And so the credibility -- the actual
2 credibility of this individual it seems to me doesn't even
3 really matter because if the police thought that what this
4 person provided was sufficient for probable cause, then
5 they've got qualified immunity.
6    So whether or not this person is actually credible
7 seems to be beside the point, because it's the analysis at the
8 time of the incident whether the police had probable cause.
9    MR. COLIHAN: Well, I think probable cause is
10 measured by the reasonable officer in the shoes of the people
11 --
12    THE COURT: Okay.
13    MR. COLIHAN: -- there at the time and place, I
14 think.
15    THE COURT: All right. Yes, that is correct.
16    MR. COLIHAN: If the police know that this guy has
17 two or three felony convictions for drugs, or perjury, or this
18 or that, aren't we in a different situation than if the man is
19 as pure as the driven snow and has never been convicted of a
20 crime or arrested?
21    THE COURT: It might if that person were testifying
22 in court, but given what you've said is the nature of CI's,
23 they usually do have some connection to criminal activity,
24 otherwise they wouldn't either be motivated to work with the
25 police, or have access to the criminal activity.

1           So -- and I don't think --
2           MR. COLIHAN: I think --
3           THE COURT: -- that the system is set up to say that
4   anybody who has a criminal conviction is precluded from
5   providing probable cause to the police. So that's where --
6           MR. COLIHAN: Oh, no --
7           THE COURT: -- I'm a little bit stuck.
8           MR. COLIHAN: -- not precluded but I think the jury
9   should hear what this man's background is on the question of
10  credibility.
11          I tried to bring out in quotes from the heavily
12  redacted transcript the police version of this is there must
13  be to support an arrest for criminal possession of stolen
14  property, an unequivocal statement by the informant that the
15  item is stolen.
16          In one part of the transcript he says they're not
17  stolen. And in another part of the transcript he says they
18  aren't stolen.
19          THE COURT: They are stolen or are not? I'm sorry.
20          MR. COLIHAN: Both.
21          THE COURT: There are two different statements. One
22  is yes and --
23          MR. COLIHAN: He said both.
24          THE COURT: Okay. But so here's -- that's exactly
25  my point. So in this case specifically there is a recording

1  of what the CI said and, therefore, what --
2  MR. COLIHAN: Partial recording.
3  THE COURT: Okay. Of what your client heard.
4  And so you can certainly attack whether what was
5  said and recorded supports the police's belief that there was
6  probable cause but whether or not the CI is credible doesn't
7  really matter and, in fact, it seems to me in a sting
8  operation the CI is probably lying, because that's the nature
9  of the sting operation, because that -- the property that he
10 brought in was probably not stolen because the police gave it
11 to him. You see what I'm saying?
12 So by the nature of the situation the person's not
13 telling the truth.
14 So to attack his credibility --
15 MR. COLIHAN: I have to thank you for that one, Your
16 Honor.
17 THE COURT: Yes. The credibility doesn't really
18 matter. It's really what's on the tape and what the police
19 heard. If you want to attack the police and say what you
20 heard isn't enough for probable cause, feel free. That's your
21 prerogative.
22 But to say that the CI is not credible is -- I just
23 don't see where that takes you anywhere. Okay?
24 So I don't think that that person's criminal record
25 is relevant here and I'm not going to order its production.

1    MR. COLIHAN: All right. As long as I have you on
2 the phone --
3    THE COURT: All right.
4    MR. COLIHAN: -- what I would like to do, if it's
5 all right with you, is write another letter probably Monday.
6 There are -- the matter has come up.
7    Mr. Steven Cummings, one of the three co-plaintiffs,
8 is incarcerated and has been up in Riker's for some time now.
9    THE COURT: Okay.
10    MR. COLIHAN: The City is talking about accessing
11 conversations between Mr. Cummings and his two co-plaintiffs.
12 I've done some preliminary research about common interest, or
13 shared interest, of these three individuals.
14    Also, I know the City's going to say that there's --
15 on the recording the preamble to these jail house
16 conversations they say this conversation is recorded.
17    I think there are some very specific rules, I just
18 have to access them, about what has to be said in that
19 preamble and what has to be posted near the telephones.
20    All I'm going to ask the court to do, until I can do
21 a thorough job over the next couple of days, is ask the City
22 not to look at any of those recordings until we've had a
23 discussion in these areas.
24    THE COURT: All right. So has -- Ms. Jacobs, has
25 the City requested or received these recordings?

1          MS. JACOBS: We have. And just to be --
2          THE COURT: You do. You have them.
3          MS. JACOBS: No one's listened to them.
4          THE COURT: Okay.
5          MS. JACOBS: And I told Mr. Colihan that we
6  wouldn't listen to them until Thursday, given his -- you know,
7  given this. We'll certainly wait until the issue is dealt
8  with by the court.
9          But again, just to clarify, these are recordings
10 made at Riker's Island. So, you know, as with anyone who's
11 incarcerated at Riker's the phone calls are recorded. Those
12 recordings are used by DA's. They're used by our office.
13 They're used -- you know, they're used fairly commonly.
14 People at Riker's listen to them, you know, in order to --
15 they're monitored.
16         And so the dispute we're having is whether or not,
17 you know, we can access any of those -- I believe that Mr.
18 Colihan's objecting to us listening to any of those calls,
19 including calls between his clients.
20         So we'll certainly -- I do -- I actually just got a
21 call today. I do have the recordings here in my office but I
22 will put them away and no one will listen to them until the
23 court has ruled on the issue.
24         THE COURT: Okay. Good. So please make sure that
25 that is followed by everyone in your staff and --

1     MS. JACOBS:  Absolutely.
2     THE COURT:  Okay.  And Mr. Colihan, what is the time
3  frame?  You said you were going to file a request next week?
4     MR. COLIHAN:  I think I could certainly have
5  something by Wednesday or Thursday, if that's okay.
6     THE COURT:  Okay.  That's fine.
7     The only thing I would say is are you filing your
8  request then?  Will you have enough information for the court
9  to consider a pleading?
10    MR. COLIHAN:  Actually, that's a very -- that's an
11 excellent question. I have to thank the court a second time
12 this morning.
13    If the court could direct to give these -- Ms.
14 Jacobs to give these recordings, I might be in a position to
15 save everybody a lot of time, because if there's nothing
16 problematic on them, you're done.
17    MS. JACOBS:  Your Honor, I'm simply not comfortable
18 doing that. I mean, again, I don't know what's on the
19 (indiscernible). It's his client.
20    I also have to say we do have some concerns here.
21 These exact kind of recordings were used in a prior case with
22 Mr. Colihan where there was some conversation indicating that
23 Mr. Colihan had directed his client to go seek medical
24 treatment in order to increase his damages.
25    And so I am -- while there may also be some -- you

1    know, I understand that there may be some other concerns here
2    as to what's going on, in the past Mr. Colihan hasn't
3    objected. I believe he may be having -- may be concerned here
4    that there is similar materials that's harmful to his clients,
5    you know, or implicates him in some way.
6              And so I am concerned about -- about turning the
7    (indiscernible) over --
8              THE COURT:  I understand and my question --
9              MR. COLIHAN:  Your Honor, hold on --
10             THE COURT:  Wait hold on.  Mr. --
11             MR. COLIHAN:  I'm trying to understand this.
12             THE COURT:  Mr. Colihan, let me jump in.  What I was
13   asking you --
14             MR. COLIHAN:  I'm sorry, Judge.
15             THE COURT:  What I was asking you was more in the
16   nature of do you have enough information with regard to what
17   signs there were by the telephone.  What disclaimers there may
18   have been.  That was the question.  Not about the content.
19             MR. COLIHAN:  Sorry.  Sorry.
20             THE COURT:  So I just wasn't sure --
21             MR. COLIHAN:  No, actually, Your Honor, I don't --
22             THE COURT:  I wasn't sure if what you were going to
23   file next week was in the nature of a pleading where you have
24   all the facts and you've done the legal research, or you're
25   just making a request.

1          MR. COLIHAN:  I must thank you again, because that's
2     the third matter you've alerted me to.
3          I guess we may need -- I think we would need some
4     discovery as to what, if any, signs or warning devices are
5     placed next to the phones that Mr. Cummings actually used,
6     supposedly used, and we need a time frame of when these calls
7     began and when they ended.
8          MS. JACOBS:  I do have a call log that I've
9     received. It just -- it simply states, you know, this is the
10    list of phone numbers and the times that they were placed.
11    So I can certainly turn that over.
12         As for any discovery, at this point, you know, we've
13    been discussing this for about a week or so and I -- frankly,
14    I don't have any -- I'm not entirely sure what he might be
15    entitled to in terms of discovery because I simply haven't
16    seen any case law indicating what kinds of things, you know,
17    plaintiffs are claiming we need to have done.
18         And frankly, again, these are routinely used, these
19    tapes.  And so I do have, you know, there's nothing that I'm
20    aware of that needs to be done that is not being done.
21    If it were, I would imagine it would have been challenged
22    prior to this.
23         So I think before we're willing to provide discovery
24    on the issue, I think there needs to be some sort of showing
25    that it's necessary -- that there's case law out there that

1 says here are the things that need to be done in order for
2 these to be listened to.
3     THE COURT: Okay. So then --
4     MR. COLIHAN: I guess I can -- not guess, I will
5 provide authority for all of this, Your Honor.
6     THE COURT: Great.
7     MR. COLIHAN: And just when everybody's done, I have
8 one other question.
9     THE COURT: Okay. So then what I'll say is you said
10 by next week you'll be able to do that, so I'll say by March
11 1st you should file --
12     MR. COLIHAN: Yes.
13     THE COURT: -- your pleading.
14     MR. COLIHAN: Yes.
15     THE COURT: And that will include legal citations
16 and analysis with regard to those phones calls. And if you
17 establish that certain things need to be there, then Ms.
18 Jacobs I'm sure will have the opportunity to address those in
19 her response.
20     Ms. Jacobs, how much time do you need?
21     MS. JACOBS: Yes, Your Honor. I'm trying to pull up
22 my calendar. I would -- I actually -- I'm going to ask for a
23 little bit more time. I am away March 2nd through the 7th. So
24 I would ask -- I mean, if the court would allow me, I would
25 ask until March 12th. I realize that's a long time, but -- for

1  a discovery dispute but I think that -- I am leaving the
2  evening -- early in the morning on the 2nd.  I'm going out of
3  the country.
4              THE COURT:  Okay.  All right.  So March 12th for
5  your response.
6              MS. JACOBS:  Yes.
7              THE COURT:  And then I'll take a look at it and see
8  if I need to have a conference or I could just decide it.
9              MS. JACOBS:  Thank you.
10             THE COURT:  Then Mr. Colihan, you said you had one
11 more matter?
12             MR. COLIHAN:  Right.  There seems to be some
13 intimation that somehow I have done something wrong, that I've
14 encouraged someone to seek medical treatment when it was not
15 required.  Are we talking about this case?
16             MS. JACOBS:  No, I'm not.
17             MR. COLIHAN:  Are we talking about a different case?
18             MS. JACOBS:  This is the Christian Paterson case.
19             MR. COLIHAN:  Okay.  That I think was tried --
20             MS. JACOBS:  That --
21             MR. COLIHAN:  Could I finish, please?
22             MS. JACOBS:  Absolutely.
23             MR. COLIHAN:  That I think was tried in 2015 or '16,
24 right?
25             THE COURT:  Mr. Colihan, I don't know--

1      MS. JACOBS:  I'm not sure.

2      THE COURT:  It's not relevant to this case and I
3 think Ms. Jacobs was just bringing it up to show why the
4 City's concerned.  I take no position on whether it happened
5 or not and I don't --

6      MR. COLIHAN:  I just want to say --

7      THE COURT:  -- find your conduct in this case to be
8 problematic, so I don't know that we need to talk about that -
9 -

10     MR. COLIHAN:  I -- that case was tried several years
11 ago, yes. I have not heard of any -- it was a defense verdict,
12 it's true.

13     THE COURT:  Well --

14     MR. COLIHAN:  I have not heard from any committee,
15 or grievance committee.  Judge Castel has not sanctioned me or
16 suggested that I be sanctioned. I know of no problem with
17 that.

18     I have not had such a problem in almost 34 years of
19 the practice of law.  And I resent this.  If I've done
20 something wrong, someone should say what it is. If I haven't,
21 they shouldn't be doing it by innuendo and this is very
22 disturbing.

23     THE COURT:  Mr. Colihan, like I said, I have taken
24 no position on what Ms. Jacobs said. I'm not holding it
25 against you.

1           Like I said, I haven't found you to have acted
2 improperly in the case as far as I can see, and so I don't
3 think we need to spend any more time on that.  All right?
4           MR. COLIHAN:  All right. I just wanted to make that
5 clear.  And thank you.  We've been litigating this almost --
6 it will be four years in November.
7           THE COURT:  Yes, and that really does --
8           MR. COLIHAN:  Not to be pointing any fingers.
9           THE COURT:  Well, I am aware of that and I'm not --
10 you know, it's not the best thing in the world to have such an
11 old case. I am concerned about this new case that's been
12 filed, but I suppose that's a matter that Judge Dearie -- is
13 it Judge Dearie or Judge Block?
14           MR. COLIHAN:  Uh-hm.
15           MS. JACOBS:   Yes.
16           THE COURT:  Judge Dearie will take up.
17           MR. COLIHAN:  I think it's Judge Dearie, yes.
18           THE COURT:  So Judge Dearie will handle that and
19 we'll see where that goes.
20           I've -- myself and my law clerk looked at the
21 complaints and have not seen anything different.  So I'm not
22 really sure why this has happened, but like I said, it's not a
23 decision for me to make.
24           So where are we in this case then?  Is the
25 deposition of the individual going to take place at another

1  date or are we done with that issue?
2        MS. JACOBS:  Yes.  We will have to find a date.
3  Mr. Colihan and I will -- we will find a date for the
4  deposition.
5        THE COURT:  Okay.  And is that going to be the end
6  of the discovery here or -- what's left?
7        MS. JACOBS:  I -- from my perspective, I think
8  other than this issue with the tapes, that's the end of
9  discovery.
10        Again, I'm not entirely sure how this second case
11  may impact the discovery. I don't know whether -- again, we're
12  not here to talk about that, but it does appear that to the
13  extent it continues, they should be consolidated.
14        I don't know if Mr. Colihan intends to take
15  additional depositions of people.  You know, there's a lot of
16  questions out there with respect to the -- frankly, we haven't
17  discussed -- I think it's too soon for that. But from my
18  perspective, there's nothing else.
19        MR. COLIHAN:  This may save some time.  I didn't
20  have any intention of deposing the people who have already
21  been deposed a second time.
22        There are some individuals that we did not find out
23  about, despite the fact that the City had a video of this
24  incident for quite a long time after the 2014 case that's
25  before Your Honor was commenced.

1          I think it's pretty clear to me that anyone not
2  deposed in these cases will end up -- the City's position will
3  be they're the ones who actually committed the wrongs and not
4  the people I've already deposed.
5          But I don't want to burden you with that, Your
6  honor.  This is something we have to hash out in front of
7  Judge Dearie.
8          MS. JACOBS:  Again, those names were provided, I
9  believe, almost two years ago at this point in time.  So they
10 were -- so I agree that it should be hashed out in front of
11 Judge Dearie in terms of what happens.
12         But to say that they've only just learned these
13 names, I mean, it was over two years ago.
14         THE COURT:  Okay.  We don't need to go through that,
15 but I guess my question was this case.  Let's just assume it's
16 just this case.
17         Is -- after this last deposition we'll be done.  Is
18 that right, or is there more discovery in this case?
19         MR. COLIHAN:  Your Honor, there's a lot of people
20 involved and forgive me, I don't have the whole file with me.
21         From my perspective, there might be one or two more.
22 Did we depose -- was it Sargeant (indiscernible)  or --
23         THE COURT:  Well, hold on.  Before we get into the
24 details of it, is there -- I've lost track of the discovery
25 deadlines and what's left.

19

1  And so what I'm trying to do is shepard this case
2  that's before me to its conclusion so that it can be ready for
3  dispositive motions or trial. So --
4      MS. JACOBS: Your Honor, I believe the last place
5  we left it, because we -- the last discussion we had about
6  deadlines is we were having a debate over who would be deposed
7  first and some concerns about the CI.
8      You know, I think that given the scheduling issues
9  with the CI, we said we would depose the plaintiffs first and
10 then the CI, but there was no deadlines set to complete that.
11     THE COURT: Okay. So then I'm going to ask the
12 parties to give me their -- a revised joint scheduling order
13 that wraps this case up, okay?
14     MS. JACOBS: Yes.
15     MR. COLIHAN: That's fine.
16     THE COURT: And so I'd like you to just decide --
17 figure out what still needs to be done. Give me some
18 deadlines on it and commit to a final date, okay.
19     MS. JACOBS: Yes, Your Honor.
20     THE COURT: So you should do that -- if you can do
21 that by March 13th that would be useful, so that you've had a
22 chance to figure out your response on the telephone calls and
23 then tell me what other discovery needs to happen to finish
24 this case. All right?
25     MS. JACOBS: Yes, Your Honor.

1  MR. COLIHAN: Certainly I can do that. And I'll
2  just quickly ask Ms. Jacobs to give me some dates, after she
3  gets back from her trip, for the confidential informant.
4  THE COURT: Okay. Great.
5  MS. JACOBS: Certainly.
6  THE COURT: All right. Is there anything else?
7  MR. COLIHAN: I can't think of anything except to
8  say thank you for your time, Your Honor
9  THE COURT: All right. Thank you.
10  MS. JACOBS: Nothing from defendants. Thank you,
11  Your Honor.
12  THE COURT: Thank you to both of you. Have a good
13  weekend.
14  MS. JACOBS: Take care.
15  MR. COLIHAN: Have a good weekend. Bye, bye.
16  (Proceedings concluded at 11:27 p.m.)
17  I, CHRISTINE FIORE, court-approved transcriber and
18  certified electronic reporter and transcriber, certify that
19  the foregoing is a correct transcript from the official
20  electronic sound recording of the proceedings in the above-
21  entitled matter.
22
23  *Christine Fiore*
24  _____  March 7, 2018
25  Christine Fiore, CERT